**Chip Giles, ISB # 9135**
**GILES & THOMPSON LAW, PLLC**
350 N. 9th Street, Suitet 500
Boise, ID 83702
Telephone: (208) 342-7880
Facsimile: (208) 947-2424
*chip@gtidaholaw.com*

**Attorneys for Chelsea Spencer**

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| CHELSEA SPENCER,<br><br>            Plaintiff,<br><br>v.<br><br>EBC, LLC dba as BELLA AQUILA,<br>BOTTAIO, LLC dba as BELLA AQUILA, and<br>JOHN/JANE DOES I through X, Whose True<br>Identities are Currently Unknown,<br><br>            Defendants. | Case No.<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

COMES NOW, Chelsea Spencer, the above-named Plaintiff, and for cause of action against the Bella Aquila E B C, LLC dba Bella Aquila sets forth allegations that are governed by the Civil Rights Act of 1964 and the Idaho Human Rights Act.

Ms. Spencer COMPLAINS AND ALLEGES as follows:

### PARTIES

1. Chelsea Spencer ("Ms. Spencer") at all times herein mentioned was a resident of Ada County, Idaho. Ms. Spencer currently resides in Oakland, Oregon.

**COMPLAINT AND DEMAND FOR JURY TRIAL - 1**

2.  Bella Aquila, E B C, LLC dba Bella Aquila (hereinafter Bella Aquila) at all times herein mentioned has been, and presently is, an Idaho Limited Liability Corporation with its principal place of business in Eagle, Idaho.

3.  Upon information and belief, E B C LLC's main business asset is the Bella Aquila restaurant located at 775 Rivershore lane, Eagle, Idaho 83616.

## JURISDICTION, VENUE AND NOTICE

4.  The unlawful and wrongful conduct alleged in this Complaint occurred in Ada County, State of Idaho.

5.  This Honorable Court has original jurisdiction over Ms. Spencer's Federal Claims under 28 U.S.C. § 1331 and supplemental jurisdiction pursuant to 28 U.S.C. § 1367 with respect to Ms. Spencer's claims under the laws of the State of Idaho.

6.  Venue in the United States Court for the District of Idaho is appropriate under 28 U.S.C. § 1391 (b) and (c). Regarding Notice, Ms. Spencer filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on February 28, 2017.

7.  Thereafter the EEOC transferred the charge to the Idaho Human Rights Commission ("IHRC"). After receiving Defendant's response and Plaintiff's rebuttal the IHRC issued a Right to Sue on August 2, 2017.

## STATEMENT OF FACTS

8.  Ms. Spencer began working for Bella Aquila in mid April 2016 as a server.

9.  Ms. Spencer came to work at Bella Aquila with years of experience in the service industry.

COMPLAINT AND DEMAND FOR JURY TRIAL - 2

10. Ms. Spencer was an excellent employee and received multiple accolades from the patrons of Bella Aquila. These accolades were documented at the website Open Table Online. These reviews further evidence Ms. Spencer's excellent performance, service and attention to customers.

11. Ms. Spencer's manager was Chad Cooper ("Mr. Cooper"), the assistant manager was Nicole J Grasska ("Ms. Grasska").

12. During many of Ms. Spencer's shifts, Mr. Cooper would drink excessively, and work while under the influence of alcohol.

13. During summer and fall 2016 Mr. Cooper hired three new male employees to work dinner shifts alongside Ms. Spencer.

14. These three new male employees drank along with Mr. Cooper during and/or after shifts. In addition to these three new, all male hires, other existing/long standing male Bella Aquila servers also drank with Mr. Cooper during and after shifts.

15. While Ms. Spencer would often have her "shift drink" after her shift (a common practice in the service industry), Ms. Spencer only drank while on shift if there were a tasting for new cocktails or wines to be served at Bella Aquila.

16. Prior to the hire of the three new male servers, Ms. Spencer averaged six shifts per week. After the arrival of the new male hires, Ms. Spencer's shifts were cut back to three shifts per week.

17. Ms. Spencer even helped train one of the new male hires. Despite her shift reductions, Ms. Spencer continued to work hard for Bella Aquila as a dedicated employee, all the while watching the new male hires (including the one she trained) receive more shifts, and as a result

**COMPLAINT AND DEMAND FOR JURY TRIAL - 3**

more income.

18. Eventually, Ms. Spencer discussed her concern with Ms. Grasska. Ms. Grasska's response regarding the male servers was "I can't give them less and expect them to stay around." Somehow a similar theory did not apply to Bella Aquila's female servers. After this discussion with Ms. Grasska, Ms. Spencer continually received less shifts than similarly, and even lesser experienced male counterparts.

19. One evening, after Mr. Cooper had checked Ms. Spencer out from her shift he posted a rude note for all employees to view stating that there was unpolished silverware, but to leave it out for Ms. Spencer to clean when she arrived the next day.

20. Ms. Spencer provided the note to assistant manager Ms. Grasska, who told Ms. Spencer the note was inappropriate, but that it was typical for some silverware to be left for opening servers to polish since dishwashers were never done by the time the closing server was finished.

21. After the silverware incident, Ms. Spencer paid more attention to male server's requirements to polish silverware prior to leaving after work. Ms. Spencer witnessed a number of male employees leave without polishing silverware without reprimand.

22. On a separate occasion, Ms. Spencer was eating after she had clocked off her shift. Mr. Cooper ordered Ms. Spencer to polish the remaining silverware even though she had clocked off for the night, and only remained at the restaurant to eat dinner.

23. On Wednesday, November 16, 2016 Ms. Spencer was ordered to train one of the new male hires on how to work at a banquet. Ms. Spencer was approved by both Mr. Cooper and assistant manager Nikki Grasska ("Ms. Grasska") to train the new hire since another server named

COMPLAINT AND DEMAND FOR JURY TRIAL - 4

Kelley did not want to train a new server on shift. Ms. Spencer met with Ms. Grasska prior to the banquet to receive direction and guidance on conducting the event, and the training. The initial plan was for the trainee to attend to 10 guests, and Ms. Spencer to attend to 20. However, as the banquet proceeded, Ms. Spencer ended up attending 25 guests, while the trainee only attended 5 guests.

24. The then existing custom at Bella Aquila was for the training server to keep all the tips earned during the banquet training. At the banquet mentioned above $140.00 in tips were earned. However, at the end of the banquet Mr. Cooper first paid Ms. Spencer's trainee $70.00 representative of half the tips earned at the banquet. After paying the trainee, Mr. Cooper then paid Ms. Spencer the other $70.00.

25. Mr. Cooper split the tips even though Bella Aquila's prior practice provided the training server all tips, Ms. Spencer attended nearly all of the guests at the banquet, and additionally supervised the trainee highly during in serving his five guests.

26. On November 16, 2016 after the banquet Ms. Spencer was sitting at the bar eating dinner, amongst some of the new male hires. Mr. Cooper was behind the bar. One of the new male hires approached the bar and requested a beer named "Broad Street Blond," from Mr. Cooper. Mr. Cooper's response was "got one right here is you want to take her for a test run," gesturing toward Ms. Spencer, who is blond. Bella Aquila's employment manual contains an "non-harassment" policy which governs and prohibits this very conduct.

27. After Mr. Cooper's comment, Ms. Spencer followed the complaint procedure provided in the Bella Aquila Employee Handbook and immediately notified management. Since the offender, Mr. Cooper, was the general manager, Ms. Spencer notified Ms. Grasska, the assistant manager. Ms. Grasska was unable to meet with Ms. Spencer until Friday, November 16, 2016. Ms.

Spencer informed Ms. Grasska about the inappropriate comment, and that Mr. Cooper had split the tips earned at the banquet between her and the new trainee.

28. Ms. Grasska accepted Ms. Spencer's complaint, informing her "I've been on your end of it, so I do feel for you but Chad (Mr. Cooper) is who he is and he's not going to change."

29. Ms. Spencer heard nothing from Ms. Grasska over the weekend, and followed up with her on Monday, November 21, 2017. Ms. Spencer met briefly with Ms. Grasska that morning. Ms. Grasska then left to speak with Mr. Cooper. At that point Mr. Cooper approached Ms. Spencer, summarily terminated her employment with Bella Aquila, informed her that she was "86'ed" from the premises, and lastly told her that if she called or came back to the restaurant that he would "call the cops on her."

30. Shortly after making the complaint about Mr. Cooper's behavior, Ms. Spencer was not only summarily terminated, but "86'ed" from a public establishment and threatened by her former manager.

31. Ms. Spencer never received a report of Bella Aquila's investigation as required by the Complaint Procedure section of the Bella Aquila Employee Handbook. Despite the Handbook's clear provisions prohibiting and penalizing such conduct, upon information and belief Mr. Cooper was never reprimanded for his actions.

32. As manager Mr. Cooper created a culture of gender discrimination at Bella Aquila.There have been former charges of discrimination by a female employee with the Equal Employment Opportunity Commission. There is also a separate employee who has been referred to on multiple occasions by a sexually degrading, vulgar and inappropriate name.

**COMPLAINT AND DEMAND FOR JURY TRIAL - 6**

## COUNT ONE

*Retaliatory Discharge of Employment in Violation of Title VII of the Civil Rights Act of 1964 and the Idaho Human Rights Act*

1. Ms. Spencer hereby realleges all Paragraphs as set forth above, and incorporates the same herein by reference.

2. Ms. Spencer reported conduct that she perceived to be sexually harassing.

3. In response to Ms. Spencer's reporting of sexual harassment, Bella Aquila terminated Ms. Spencer's employment.

4. The action of terminating Ms. Spencer's employment in response to a report of sexual harassment is a violation of the Civil Rights Act, 42 U.S.C. § 2000e, *et. seq.* and the Idaho Human Rights Act, Idaho Code § 67-5901 *et seq.*, which prohibits retaliation for the reporting of sexual harassment.

5. As a result of Bella Aquila's violation of the Civil Rights Act, 42 U.S.C. § 2000e, *et. seq.*, and the Idaho Human Rights Act, Idaho Code § 67-5901 *et seq.*, Ms. Spencer is entitled to compensatory damages including, but not limited to, lost wages and lost benefits in an amount to be determined with specificity at trial.

6. Ms. Spencer is entitled to recover her attorney's fees and costs incurred in pursuing this matter pursuant to 42 U.S.C. § 2000e-5(k) and Idaho Code 12-121.

7. Ms. Spencer hereby reserves this paragraph for the inclusion of a claim for punitive damages pursuant to 42 U.S.C. § 1981a and Idaho Code § 6-1604.

## COUNT TWO

*Sexual Harrassment in Violation of Title VII of the Civil Rights Act of 1964 and the Idaho Human Rights Act*

8.  Ms. Spencer hereby realleges all Paragraphs as set forth above, and incorporates the same herein by reference.

9.  Ms. Spencer was subjected to sexual harassment during her employment with Bella Aquila.

10. Mr. Cooper's sexually harassing and inappropriate statement regarding Ms. Spencer which was made in the presence of several male co-workers, subjected Ms. Spencer to a hostile work environment.

11. As a result of Bella Aquila's violation of the Civil Rights Act, 42 U.S.C. § 2000e, *et. seq.*, and the Idaho Human Rights Act, Idaho Code § 67-5901 *et seq.*, Ms. Spencer is entitled to compensatory damages including, but not limited to, lost wages and lost benefits in an amount to be determined with specificity at trial.

12. Ms. Spencer is entitled to recover her attorney's fees and costs incurred in pursuing this matter pursuant to 42 U.S.C. § 2000e-5(k) and Idaho Code 12-121.

13. Ms. Spencer hereby reserves this paragraph for the inclusion of a claim for punitive damages pursuant to 42 U.S.C. § 1981a and Idaho Code § 6-1604.

## COUNT THREE

*Violation of Idaho's Blacklisting Statute (I.C. § 44-201)*

14. Ms. Spencer incorporates herein by reference all of the foregoing and following allegations of her complaint as though fully set forth herein.

15. Upon information and belief, Bella Aquila failed to act in good faith and provide

**COMPLAINT AND DEMAND FOR JURY TRIAL - 8**

information about Ms. Spencer's job performance, professional conduct, and/or performance evaluation to potential, prospective employers with whom Ms. Spencer was seeking subsequent employment.

16. Bella Aquila acted with actual malice and/or the deliberate intent to mislead, when they provided information to potential, prospective employers of Ms. Spencer.

17. As a direct and proximate result of Bella Aquila's tortious conduct set forth herein, Ms. Spencer has suffered damages, both economic and noneconomic, in amounts to be proven at trial but which meet the jurisdictional threshold of this Court.

18. As a result of Bella Aquila's violation of the Civil Rights Act, 42 U.S.C. § 2000e, *et. seq.*, and the Idaho Human Rights Act, Idaho Code § 67-5901 *et seq.*, Ms. Spencer is entitled to compensatory damages including, but not limited to, lost wages and lost benefits in an amount to be determined with specificity at trial.

19. Ms. Spencer is entitled to recover her attorney's fees and costs incurred in pursuing this matter pursuant to 42 U.S.C. § 2000e-5(k) and Idaho Code 12-121.

20. Ms. Spencer hereby reserves this paragraph for the inclusion of a claim for punitive damages pursuant to 42 U.S.C. § 1981a and Idaho Code § 6-1604.

## COUNT FOUR

### (Gender Discrimination including Termination in Violation of Title VII and The IHRA)

21. Ms. Spencer realleges and incorporates by reference all paragraphs set forth above.

22. Bella Aquila treated Ms. Spencer and other female Bella Aquila employees unfavorably when compared to its male employees by:

    a) failing to promote them or promoting them only after a longer period

COMPLAINT AND DEMAND FOR JURY TRIAL - 9

of employment;

  b) giving them work assignments that were not as lucrative;

  c) scrutinizing their work more closely;

  d) disciplining them more harshly;

  e) providing them less perks and opportunities to socialize with upper management;

  f) paying them the same or less than less tenured male counterparts; and

  g) firing them for minor infractions, for no reason, or for retaliatory means.

23. Upon information and belief, Bella Aquila terminated Ms. Spencer for an alleged minor reason, and in light of her outstanding service, although her male colleagues were given much lesser punishment for more serious infractions.

24. Bella Aquila discriminated against Ms. Spencer on the basis of gender, and treated her differently than male employees.

25. As a result of Bella Aquila's unlawful conduct in violation of Title VII and IHRA, Ms. Spencer is entitled to reinstatement and back pay (or front pay in lieu of reinstatement); prejudgment interest; emotional distress; and attorneys' fees and costs expended in this action.

26. As a result of Bella Aquila's violation of the Civil Rights Act, 42 U.S.C. § 2000e, *et. seq.*, and the Idaho Human Rights Act, Idaho Code § 67-5901 *et seq.*, Ms. Spencer is entitled to compensatory damages including, but not limited to, lost wages and lost benefits in an amount to be determined with specificity at trial.

27.     Ms. Spencer is entitled to recover her attorney's fees and costs incurred in pursuing this matter pursuant to 42 U.S.C. § 2000e-5(k) and Idaho Code 12-121.

28.     Ms. Spencer hereby reserves this paragraph for the inclusion of a claim for punitive damages pursuant to 42 U.S.C. § 1981a and Idaho Code § 6-1604.

## COUNT FIVE
### (Discrimination in Terms & Conditions in Violation of Title VII)

29.     Ms. Spencer realleges and incorporates by reference all paragraphs set forth above.

30.     Bella Aquila subjected Ms. Spencer to adverse employment actions when compared with her male colleagues including, but not limited to:

  a) treating Ms. Spencer with hostility;

  b) giving her work assignments that were not as lucrative;

  c) scrutinizing her work more closely;

  d) disciplining her more harshly;

  e) providing her less perks and opportunities to socialize with upper management;

  f) paying her less; and

  g) firing her for no reason.

31.     These adverse employment actions materially affected the terms conditions and/or privileges of her employment.

32.     Bella Aquila's decision to subject Ms. Spencer to one or more of these adverse employment actions was based on her gender.

33.     As a result of Bella Aquila's discriminatory conduct, Ms. Spencer suffered damages such as lost compensation, lost benefits and emotional distress.

**COMPLAINT AND DEMAND FOR JURY TRIAL - 11**

34. Additionally, pursuant to Title VII, Ms. Spencer is entitled to recover all attorneys' fees and costs expended in prosecuting this action.

35. Bella Aquila's unlawful conduct toward Ms. Spencer in violation of Title VII was done with reckless disregard for her federally protected rights, and as such, Bella Aquila should be subjected to punitive damages as well.

## COUNT SIX
### (Violation of Equal Pay Act against all Bella Aquila)

36. Ms. Spencer incorporates the allegations of the above paragraphs herein.

37. By paying Ms. Spencer at a rate less than her male predecessor for substantially equal work on a job requiring substantially equal skill, effort and responsibility under similar work conditions, Bella Aquila violated the Equal Pay Act ("EPA").

38. Because Bella Aquila paid her less than it paid male managers, Ms. Spencer has suffered and will continue to suffer economic losses.

39. As a result of Bella Aquila's EPA violation, Ms. Spencer is entitled to recover the amount of wages she would have been paid in the absence of the violation, an equal amount as liquidated damages, and prejudgment interest on those amounts.

40. As a result of Bella Aquila's violation of the Civil Rights Act, 42 U.S.C. § 2000e, *et. seq.*, and the Idaho Human Rights Act, Idaho Code § 67-5901 *et seq.*, Ms. Spencer is entitled to compensatory damages including, but not limited to, lost wages and lost benefits in an amount to be determined with specificity at trial.

41. Ms. Spencer is entitled to recover her attorney's fees and costs incurred in pursuing this matter pursuant to 42 U.S.C. § 2000e-5(k) and Idaho Code 12-121.

42. Ms. Spencer hereby reserves this paragraph for the inclusion of a claim for punitive damages pursuant to 42 U.S.C. § 1981a and Idaho Code § 6-1604.

## COUNT SEVEN
### (Breach of the Implied Covenant of Good Faith and Fair Dealing)

43. Ms. Spencer hereby realleges the allegations contained in Paragraphs 1 through 42 as set forth above, and incorporates the same herein by reference.

44. The at-will employment relationship between Ms. Spencer and Bella Aquila included an implied covenant of good faith and fair dealing by both parties.

45. By terminating Ms. Spencer because of her reporting of sexual harassment, Bella Aquila substantially nullified a benefit to which Ms. Spencer was entitled under the employment relationship, and thereby breached the implied covenant of good faith and fair dealing.

46. As a result of Bella Aquila's breach of the implied covenant of good faith and fair dealing, Ms. Spencer has suffered damages in an amount exceeding $75,000, to be proven with specificity at trial.

47. Ms. Spencer is entitled to recover her attorneys' fees and costs incurred in pursuing this matter pursuant to Idaho Code §§ 12-120 and 12-121.

Ms. Spencer hereby reserves this paragraph for the inclusion of a claim for punitive damages pursuant to Idaho Code § 6-1604.

## DEMAND FOR JURY TRIAL

Ms. Spencer hereby demands a jury of not less than twelve (12) individuals on all claims triable to a jury pursuant to Idaho Rules of Civil Procedure 38(b).

WHEREFORE, Ms. Spencer requests that the Court enter judgment in her favor and against Bella Aquila and award the following relief:

**COMPLAINT AND DEMAND FOR JURY TRIAL - 13**

    a. Reinstatement;

    b. Back pay and benefits, in amounts to be determined at trial;

    c. Front pay, in lieu of reinstatement;

    d. Compensatory damages;

    e. Damages in the amount of three times the unpaid wages due and owing Ms. Spencer;

    f. Punitive damages;

    g. Pre-judgment and post-judgment interest at the highest lawful rate;

    h. Attorneys' fees and costs of this action; and

    i. Any such further relief as the Court deems just and equitable.

## DEMAND FOR JURY TRIAL

Ms. Spencer hereby demands a jury trial pursuant to Federal Rule of Civil Procedure 38(b).

DATED this 12th day of October, 2017.

GILES & THOMPSON LAW, PLLC

By _____
Chip Giles
Attorneys for Ms. Spencer

**COMPLAINT AND DEMAND FOR JURY TRIAL - 14**